JACKSON, ex dem. SCHERMERHORN AND OTHERS, against<br>MURCH.

To ascertain the true *east* line of the *Cambridge* patent, the *sixth* course in that patent is to be run to the most *westerly corner* of the *Walloomschack* patent, ascertained by running two courses from the house of *Gerrit Cornelius Van Ness*, and the *seventh* course in the *Cambridge* patent, must be run from the terminatingpoint of the *sixth* course, thus ascertained, *north*, 1,092 chains, to the middle of the *Battenkill*, &c.

THIS was an action of ejectment, for the recovery of 88 acres of land, part of lot. No. 4. in *Schermerhorn's* patent. The cause was tried at the *Washington* circuit, in 1811. An exemplification of a patent to *Ryer Schermerhorn* and others, dated the 11th of *May*, 1762, was read in evidence. The tract of land granted is described as lying east of a tract of land granted to *Isaac Sawyer*, *Edmund Wells* and others, " Beginning at a *sweet maple tree*, standing by the side of an inlet of water, near *Battenkill*, which said tree was marked for the northeast corner of the aforesaid tract granted to *Isaac Sawyer*, *Edmond Wells* and others, and runs from the said maple tree along the bounds of the last-mentioned tract, south 720 chains, then easterly," &c.

The lessors of the plaintiff are the owners of *Schermerhorn's* patent, and the defendant is part owner of the patent granted to *Isaac Sawyer* and others, called the *Cambridge* patent; and the only point in dispute between the parties was the true *east* line of the *Cambridge* patent.

In a deed of partition among the patentees of *Schermerhorn's* patent, bearing date the 22d of *September*, 1764, lot No. 1. in the subdivision of the tract, is described as " beginning at a certain marked maple tree, standing on the side of an inlet of water, in the northeast corner of land granted to *Isaac Sawyer* and others, and running thence south 92 chains and 50 links east," &c. Lot No. 4. is described as commencing at the southeast corner of lot No. 3. which is described as being on the west line, or first corner of the *Schermerhorn* patent.

*James Mallery*, a surveyor, testified, that he run the west line of lot No. 4. and that he commenced his survey at a tree corres-

ponding with a tree described in *Schermerhorn's* patent, as the
place of beginning, and traced the west line of that patent to the
southwest corner of lot No. 4.; that he allowed for the variation
of the compass, and run his course south 1 deg. 18 min. east; from
the maple tree he run south 305 chains, and a fence corresponded
with the line he so run, for the distance of 60 chains; thence he
run to the end of the 305 chains through cleared fields, and found
no line : he found a marked tree two chains east of the line run by
him, and on *boxing* it, he found the mark to be 46 or 47 years
old; that on running the south and north lines of lot No. 4. he
found marked trees, corresponding at right angles with the south
line as run by him.

The defendant produced an exemplification of a patent, called
the *Walloomschack* patent, the boundaries of which were descri-
bed as " beginning at a certain marked tree, which is 147 chains
distant from the late dwelling-house of *Gerrit Cornelius Van Ness*,
measured on a line running south 75 degrees east from the south-
east corner of the said bound to the said tree; thence north 13
deg. 30 min. west 90 chains and 40 links," &c.

An exemplification of the *Cambridge* patent, dated the 23d of
*July*, 1761, to *Isaac Sawyer* and others, was introduced, the bound-
aries of which were thus described : " Beginning at a large water
maple tree marked with a turtle, standing 120 chains measured on
a course north 12 degrees east distant from the southeast corner
of certain lands granted to *Peter Schuyler* and others, commonly
called the *Saratoga* patent, and 10 chains to the southward of a
place, where a line running north 12 degrees east from the said
maple tree crosses a creek called *Pohquampeack*, and this tract
runs from the said maple tree north 67 degrees east 290 chains;
87 degrees east 72 chains; then south 74 degrees east 116 chains;
then south 57 degrees east 138 chains; then south 46 deg. 30
min. east 88 chains; then south 13 degrees east 170 chains, to
the most westerly corner of a certain tract of land called *Wal-
loomschack*, granted to *Edward Collins* and others, then north
1,092 chains to the middle of *Battenkill* ; then westerly down the
stream; and then southerly, along the *Saratoga* patent, to the place
of beginning."

*George Webster*, a witness for the defendant, testified, that he
was a surveyor, and that last summer he run the east line of the
*Cambridge* patent. He commenced at the southeast corner of
the house mentioned in the *Walloomschack* patent, and run the

two first courses and distances as specified in that patent; that assuming the termination of the second course as the most westerly corner of the *Walloomschack* patent, he run a course thence north (allowing 1 deg. 30 min. variation) until he passed lot No. 4. of *Schermerhorn's* patent; that the line run by *Mallery*, as the west line of lot No. 4. was 24 chains west of the line run by him as the east line of the *Cambridge* patent.

On his cross-examination, he said, that the point assumed by him as the most westerly corner of the *Walloomschack* patent was in a meadow where there was nothing to designate it; and was very considerably within the bounds of the *Hoosick* patent; and that he had traced the courses and distances of the south boundary of the *Cambridge* patent, as specified in the grant; that the south line of the *Cambridge* patent cannot be closed, so as to bring it to the point assumed by him as the most westerly corner of the *Walloomschack* patent, without disregarding the last course and distance given in the patent, which is south 13 degrees east 170 chains, and running a course south 24 degrees east 170 chains and 50 links. That from the termination of the courses and distances on the south boundary of the *Cambridge* patent, according to the words of the grant, to the place assumed by him as the most westerly corner of the *Walloomschack* patent, is north 65 degrees east 34 chains and 95 links; that a line run due north from such termination to *Battenkill*, would, when opposite to lot No. 4. in *Schermerhorn's* patent, be very considerably west of the line run by *Mallery*, as the west line of the said lot; that the line run by the witness corresponded to a line called *Campbell's* line, and that run by *Mallery* to a line called *Bleecker's*.

Another witness testified, that 24 years ago the defendant went into possession of a farm, which he bought of one *Smith*, under the *Cambridge* patent; that the defendant's present house is east of *Bleecker's* line; that the witness bought lot No. 13. in the east tier of lots in the *Cambridge* patent, and possesses up to the *Bleecker* line.

A witness for the plaintiff testified, that he assisted *John R. Bleecker*, in 1763, in surveying the patent granted to *Schermerhorn* and others; that a few days before the trial, he saw the tree standing by a cove, or inlet of water, on *Battenkill*, at which they commenced their survey of the west line of the said patent; and that when they commenced the survey, *John R. Bleecker*, the surveyor, and *Abraham Jacob Lansing*, two of the patentees of

the *Cambridge* patent, and *Ryer Schermerhorn* and *Jacob Schermerhorn*, two of the patentees of the *Schermerhorn* patent, were present; and the said tree was recognised by the persons present, and marked as the corner tree between the two patents. This evidence was objected to, but admitted by the judge. A letter from *John R. Bleecker*, dated the 28th *November*, 1765, directed to two patentees of the *Cambridge* patent and a patentee of the *Schermerhorn* patent, though objected to, was read in evidence. In this letter, *Bleecker* stated that the *sixth* course of the *Cambridge* patent was south 13 degrees east 170 chains, which he assumed to be the westerly corner of the *Walloomschack* patent, and made a return accordingly to the surveyor-general; and that the corner so assumed will agree with the corner made for *Sawyer's* tract on the south side of *Battenkill*, being a sweet maple, which stands on a direct north course from the place first mentioned; that *Abraham J. Lansing* was present when he marked the maple tree standing on the side of an inlet of *Battenkill*, in the bound of the *Cambridge* patent; and was present also when he commenced the survey of the *Schermerhorn* patent; and that he run a due north line from the maple tree to *Battenkill* across a neck of land, and *Lansing* and *Schermerhorn* marked a tree.

A witness for the plaintiff testified, that when *A. J. Lansing*, the owner of lot No. 21. in the northeast corner of the *Cambridge* patent, sold that lot, he sold only to *Bleecker's* or *Schermerhorn's* line : at that time, being 40 years ago, one *Cloughy* was in possession, under the *Schermerhorn* patent, up to *Bleecker's* line. *Lansing* offered to sell the land between the two lines, but *Cloughy* refused to purchase, and continued in possession up to *Bleecker's* line, which possession was continued, under *Cloughy*, down to about 15 years since, when the occupier bought the claim of one *Smith*, a *Cambridge* patentee. Another witness testified, that he was in possession of land in lot No. 4. in *Schermerhorn's* patent, which he held under *Dan. Kellogg*, who had a lease from the *Schermerhorns ;* and that he possessed up to *Bleecker's* line, and continued in possession about 10 years, during which time the defendant never claimed any right east of *Bleecker's* line ; that one *Sage*, who possessed the land adjoining, under the same title, held to the *Bleecker* line.

Another witness testified, that 20 years ago, he assisted *Sage* in cutting wood on lot No. 4. within 51 rods east from the dwelling-house of the defendant, and to about 20 rods east of his present

dwelling, and the defendant did not claim the land, or forbid *Sage* to cut and carry away the timber.

The judge expressed his opinion that the defendant was entitled to a verdict; and the plaintiff, thereupon, submitted to a nonsuit, with leave to move the court to set it aside, and for a new trial.

A motion was now made to set aside the nonsuit, and for a new trial, which was argued by *Wendell*, for the plaintiff, and *Crary*, for the defendant.

*Per Curiam.* The judge expressed an opinion at the circuit, that the defendant was entitled to a verdict. This opinion having been submitted to then, the court is now called upon to review it, and to determine whether the jury would not have been warranted in deciding in conformity to it.

The only question for our consideration relates to the running of the *seventh* course in the *Cambridge* patent. Is it to be run from the most westerly corner of the *Walloomschack* patent, ascertained by running two courses from the site of *Gerrit Cornelius Van Ness's* dwelling-house; or is that course to be run from the termination of the *sixth* course of that patent, ascertained by running the previous courses and distances, without reference to the *Walloomschack* corner? We are of opinion that, as the sixth course in the *Cambridge* patent calls for the most westerly corner of the *Walloomschack* patent, that corner being ascertained by running two courses from *Van Ness's* dwelling-house, must be the point to which the sixth course in the *Cambridge* patent is to be run, and that the seventh course, north 1,092 chains to the middle of *Battenkill*, must be run from the terminating point of the preceding course thus ascertained.

*Van Ness's* house is precisely shown, and although there is no monument to be found at this day, designating the most westerly corner of the *Walloomschack*, it is fairly inferrible, from the facts in the case, that *Campbell's* line, run between forty and fifty years ago, was run from a monument then existing, and well known as such corner. The principle that a course and distance shall be rejected, when a monument is to be run to, applies to the point now under consideration. That principle is founded on the facts, that compasses vary, that surveyors are liable to mistake, and that, in the progress of settlement, as lands are cleared, obstructions removed, there would scarcely ever be a correspond-

ence in the length of chain between a survey at the granting of a patent and a resurvey after a lapse of years. The monument is preferred for the greater certainty ; and, on the same principle, as it requires, in this cause, but two courses to be run from *Van Ness's* house to ascertain the most westerly corner of the *Walloomschack* patent, that point, thus ascertained, is more certainly the true westerly corner, than the point attained after running out six courses in the *Cambridge* patent.

We have been pressed with the circumstance, that the westerly corner of the *Walloomschack* patent is thus found in a meadow, and within the bounds of the *Hoosick* patent. The dates of the *Walloomschack* and the *Hoosick* patents are not stated. We know not, therefore, which is the eldest ; but admitting *Hoosick* patent to be the eldest, and that they interfere, that circumstance would not prevent the *Cambridge* patent's running to the corner of the *Walloomschack*, as a point from which to start in the location of that patent. The plaintiff ought not to be allowed to draw an argument, from the non-existence of a known corner of that patent, when, in all probability, the recollection of it has been lost by the lapse of time.

Much stress was placed on the survey of the patent by *John R. Bleecker*, under the inspection and with the assistance of *A. J. Lansing*, they being patentees. There is no evidence in the case that the other patentees ever assented to that line; their number exceeded sixty, and it cannot be contended that the acts of part of the patentees can control the rights of those who did not assent to that act. So far from their having assented, we find *Campbell's* line, which was cotemporaneous with *Bleecker's*, and coinciding with the line run by *Webster* from the most westerly corner of the *Walloomschack* patent, ascertained in the manner already mentioned. That *Campbell's* line was run as the easterly boundary of the *Cambridge* patent, and by the patentees of that patent, cannot be doubted : it is impossible to account for the existence of that line in any other way. When, therefore, we consider that *Campbell's* is an ancient line, that the plaintiff has not shown a single foot of land to have been possessed to the west of that line, for a considerable number of years, and that even such parts as have been possessed were predatory possessions, we cannot but consider the opinion given at the trial as correct, and we accordingly deny the motion.

*Motion denied.*